NEWS ADVOCATE PUB. CO. v. CARBON COUNTY.

No. 4658.   Decided June 14, 1928.   (269 P. 129.)

*O. K. Clay,* of Price, for appellant.

*L. A. McGee,* of Price, for respondent.

GIDEON, J.

Chapter 68, Laws Utah 1919, provides for the organization and government of irrigation districts and for the ac-

quisition or construction of works for the irrigation, drainage, and local improvement of lands embraced within such districts. The Price River conservation district was organized in 1922 under said chapter 68. In the year 1923, under the authority of section 21 of this act, a tax levy was made for the district, and in December of that year a delinquent tax list was published. A sale was had of the delinquent property and the same was bid in by Carbon county. Thereafter the treasurer of Carbon county assigned to the conservation district the certificate of sale. This the treasurer was authorized and required to do by section 21 of said chapter 68 as amended by chapter 9 Laws Utah 1923. The 1923 amendment limits the period of redemption to two years from date of sale. No redemption having been made, the county clerk of Carbon county, in the month of April, 1926, caused said property to be advertised for sale under the provisions of section 6056, Comp. Laws Utah 1917 as the same is amended by chapter 140, Laws Utah 1921. Notice of the sale of the property was published in a paper owned by the plaintiff on April 29, May 6, May 15, and May 20, 1926. The plaintiff thereafter presented a bill for such services to the county commissioners of Carbon county. Payment was refused. This action is to recover the amount claimed to be due for such publication. Trial was had. Judgment entered in favor of the plaintiff for the amount of the claim. The defendant, Carbon county, appeals.

Want of authority on the part of the county clerk to authorize the publication is interposed as one defense. Lack of authority to contract the obligation by the county even if authorized by the county commissioners is also pleaded as a defense. The cause will be ruled on the second defense pleaded.

The facts in the record, if it were necessary to determine the claim based upon the first ground of defense, are such that in our judgment such defense is not available.

The general principle or rule of law that municipal corporations are not bound by contracts made without authority or in excess of the powers of such corporations is conceded. The rule applicable is stated in 15 C. J. 540, as follows:

"A county is not bound by a contract beyond the scope of its powers or foreign to its purposes, or which is outside of the authority of the officers making it. In this connection it is the rule that the authority of a county board to make contracts is strictly limited to that conferred, either expressly or impliedly, by statute, regardless of benefit to the county or of value received; and the same is true as to other county officers attempting to contract in behalf of the county. * * * All persons dealing with officers or agents of counties are bound to ascertain the limits of their authority or power as fixed by statutory or organic law, and are chargeable with knowledge of such limits. No estoppel can be created by the acts of such agents or officers in excess of their statutory or constitutional powers."

The same rule or principle is announced both in McQuillan and Dillon on Municipal Corporations. Quotations from these authors will be found in *Pue* v. *Lewis and Clark County,* 75 Mont. 207, 243 P. 573.

Chapter 3, tit. 20, Comp. Laws Utah 1917, enumerates the corporate powers of counties in this state. Section 1360 of that chapter provides:

"The several counties of the state as they now exist, and such other counties as may be hereafter oganized according to law, are bodies corporate and politic, and as such have the powers specified in this title, and such other powers as are necessarily implied."

Section 1365 of the same chapter is:

"All contracts, authorizations, allowances, payments, and liabilities to pay, made or attempted to be made in violation of this title shall be absolutely void and shall never be the foundation or basis of a claim against the treasury of such county. And all officers of said county are charged with notice of the condition of the treasury of said county and the extent of the claims against the same."

It is not claimed that there is any statute granting specific authority to the county commissioners to publish or cause to be published a notice of sale of property acquired by an irrigation or drainage district for delinquent taxes. If such authority is not to be implied from the sections of chapter 68, Laws Utah 1919, as amended by chapter 9, Laws Utah 1923, considered in connection with certain sections of the general statute relating to taxation, then no such authority exists. The trial court took the view that by reason of the failure of the Legislature to provide any method or procedure under which irrigation districts could sell or otherwise dispose of property acquired by reason of delinquent taxes that an implied power vested in the county commissioners to make such sale in like manner as the county is authorized and directed by section 6056, Comp. Laws Utah 1917, as amended by chapter 140, Laws Utah 1921, to sell property owned or acquired by it by reason of the failure to pay general taxes assessed. The duties of the county to assess, levy, and collect taxes does not necessarily or logically carry with it the implied additional duty of selling or offering for sale property acquired by a drainage district by reason of the failure of the property owner to pay the taxes levied.

Chapter 68, § 21, Laws Utah 1919, as amended by chapter 9, Laws Utah 1923, reads as follows:

"The revenue laws of this state for the assessment, levy and collecting of taxes on real estate for county purposes, except as herein modified, shall be applicable for the purposes of this Act, including the enforcement of penalties and forfeiture for delinquent taxes; provided, that lands sold for delinquent district taxes shall be sold separately for such tax, and a separate certificate of sale shall issue therefor; and provided further, that at any time after the sale shall have closed and before the time for redemption has expired, the county treasurer is authorized and required to sell and assign the interest of the county in any of the real estate sold to the county for delinquency of district taxes to the district itself, or to any person or corporation holding a recorded mortgage or other lien against

such real estate, or to any holder of bonds issued by such district, or to any person who will pay the taxes, interest, penalty and costs; and provided further, that the period of redemption from sale for taxes under this act shall be two years. In all respects, an irrigation or water conservation district shall be the beneficiary of taxes assessed and levied by it, provided, however, that the county treasurer shall retain costs and expenses provided by law for the advertisement, sale and redemption of irigation or water conservation district taxes. All taxes levied by an irrigation district under the provisions of this act, or any act supplemental or amendatory thereof, shall constitute a first lien on the property assessed, which lien shall remain in force until the taxes are paid."

Section 6056, Comp. Laws Utah 1917, as amended by chapter 140, Laws Utah 1921, so far as material, is:

"Real estate deeded to county to be sold at auction. Whenever a county has received a tax deed for any real estate sold for delinquent taxes, the board of county commissioners shall, during the month of May in each year, after publication once a week for four consecutive weeks preceding the date of sale, in a newspaper having general circulation in the county, or if no paper is published in the county, by posting in five public places in the county, offer for sale at the front door of the county courthouse, at the time specified in the notice, all such real property not heretofore sold or redeemed."

The contention of plaintiff in its final analysis is this: The general revenue laws of the state are by section 21, supra, made applicable to the assessment, levy and collection of taxes in irrigation districts. For such reason it is argued that it is the duty of the county commissioners, by the provisions of section 6056, quoted, to offer for sale in each year property purchased by the county for delinquent taxes, and hence it was and is the duty of the county commissioners to advertise and offer for sale any and all lands acquired by a water district for delinquent taxes.

By the express provisions of section 21 a county treasurer is required to issue a separate certificate of sale for land sold for delinquent taxes in an irrigation or water district. It is also made the duty of the county treasurer to "sell

and assign the interest of the county in any of the real estate sold to the county for delinquency of district taxes to the district itself." There are other provision that the county treasurer shall sell and assign the certificate of sale to any holder of bonds of the district or to any person who will pay the taxes, interest, penalty, and costs. It is provided that the period of redemption shall be two years; that the irrigation or water conservation district is the beneficiary of all taxes assessed and levied by it, the district. This court held in *Millard County Drainage District No. 3 v. Melville, County Auditor*, 62 Utah 6, 217 P. 965, that it was the duty of the county auditor, under the provisions of section 6030, Comp. Laws Utah 1917, to issue a tax deed to the holder of the certificate of sale upon the expiration of the period of redemption. It does not affirmatively appear in this record that the auditor had issued tax deeds to the conservation district as the holder of the tax sale certificate, but the matter is argued on the assumption that such deeds have been executed and it is so stated in appellant's brief. Whatever title the county may have acquired by reason of the sale for delinquent taxes in the year 1923 was transferred by the assignment of the certificate of sale and the subsequent giving of the auditor's deed to the conservation district. By the transfer of the title to the district it had acquired every right that could be acquired by reason of the assessment, levying and collection of taxes. That is to say, the county had taken every step which it is authorized and directed to take by reason of section 21, quoted, and had delivered to the conservation district the result of its efforts in assessing, levying and collecting the drainage taxes. The conservation district having acquired the title to the property, the county, as such, is nowhere authorized by a sale on its part, either public or private, to convey, or to compel the district to convey, the title held by the district. Certain sections of the Drainage Act negative any legislative intent that the county was required or authorized to sell or offer for sale property acquired by

the district for delinquent taxes. On the contrary, it appears from certain sections of said chapter 68 to be hereafter noted, that the board of directors of the drainage district is given power to alienate any property in the district not necessary for carrying into effect the purposes of the district. The act provides for the election of a board of directors. The board of directors is required by section 11 of the act to organize by electing one of its members president and to appoint a secretary. The act further provides:

"The board shall have the power, and it shall be its duty, to adopt a seal, manage and conduct the affairs * * * of the district, make and execute all necessary contracts, employ such agents, attorneys, officers and employees as may be required, and prescribe their duties."

It is provided in section 12 of the act:

"The title to all property acquired under the provisions of this act shall immediately and by operation of law, vest in such irrigation district, in its corporate name, and is hereby dedicated and set apart for the uses and purposes set forth in this act, and shall be exempt from all taxation; and said board is hereby authorized and empowered to hold, use and acquire, manage, occupy and possess said property as herein provided, and may sell property no longer necessary for the use of the district. * * *"

It will thus be seen that not only is the county not granted authority to sell property which has been acquired by the district for delinquent taxes, but that such authority is vested in the board of directors of such district if such property is not needed for the uses of the district.

A contract of the county made with the plaintiff for the publication of notice of sale of the property, the title to which the conservation district had acquired, was clearly no part of its corporate duties or powers, and under the recognized rules hereinbefore referred to must be held to be beyond the powers of the county commissioners and as such not binding upon the county.

It thus necessarily follows that the judgment of the trial court should be and accordingly is reversed; appellant to recover costs.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.